UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

**************************************************

UNITED STATES OF AMERICA,                          *

                               Plaintiff,        *

                  -v-    15-CR-333         *

SHANE ROBERT SMITH,                                *

                           Defendant.        *

**************************************************


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE MAE A. D'AGOSTINO
April 15, 2016
445 Broadway, Albany, New York


FOR THE GOVERNMENT:

         OFFICE OF THE UNITED STATES ATTORNEY
         445 Broadway
         Albany, New York  12207
            By:  Sean K. O'Dowd, AUSA

FOR THE DEFENDANT:

         WILLIAM E. MONTGOMERY, III, ESQ.
         130 Maple Street
         Glens Falls, New York  12081

1        COURT CLERK:  Today is Friday, April 15th,

2   2016, the time is 10 A.M., the case is United States of

3   America versus Shane Robert Smith, a/k/a Robert Smith,

4   case number 15-CR-333.  We are here today for a change of

5   plea hearing.

6        May we have appearances for the record, please.

7        MR. O'DOWD:  Good morning, your Honor.  Sean

8   O'Dowd on behalf of the United States, and I'm joined

9   today at counsel table with my colleague AUSA Solomon

10  Shinerock.

11       THE COURT:  Good morning to both of you.

12       MR. MONTGOMERY:  Good morning, Judge.  Bill

13  Montgomery on behalf of Shane Smith.

14       THE COURT:  Good morning to both of you.  I

15  understand we're here today because the defendant wants

16  to enter a plea of guilty; is that correct?

17       MR. MONTGOMERY:  It is, your Honor.

18       THE COURT:  All right.  Mr. Smith, before I

19  accept your plea, I will explain to you the rights that

20  you give up by pleading guilty and the consequences of

21  pleading guilty and I'll ask you some questions, and if

22  I'm satisfied that your plea is knowing and intentional,

23  I will accept it.

24       Let me ask you, sir, have you received and read

25  a copy of the indictment?

U.S. v SMITH - 15-CR-333

1          MR. MONTGOMERY:  Would you like him to stand,
2     your Honor?
3          THE COURT:  No, he doesn't have to stand but
4     you can do me a favor by moving that microphone really
5     close.
6          THE DEFENDANT:  Yes, I think so.
7          THE COURT:  Well, when you say you think so, I
8     need to know.  Has your attorney given you a copy of the
9     indictment which has the charge in it against you and
10    have you read it?
11         THE DEFENDANT:  Yes.
12         THE COURT:  Okay.  Have you had adequate time
13    and opportunity to discuss the indictment and all aspects
14    of your case with your attorney Mr. Montgomery?
15         THE DEFENDANT:  Yes.
16         THE COURT:  Since you're pleading guilty,
17    you're giving up your right to a trial and I will now
18    discuss with you some of those rights.
19         You have the right to continue to plead not
20    guilty.  You have the right to be represented by an
21    attorney at trial and at every other stage of the
22    proceedings, and if you could not afford an attorney, one
23    will be appointed for you by the Court.  You have the
24    right to a speedy and public trial by an impartial jury
25    or to a trial by the Court without a jury if you

1    consented, the government consented and the Court

2    approved.

3          At the trial, you would be presumed innocent

4    under the law and the burden would be upon the government

5    to establish your guilt beyond a reasonable doubt to the

6    satisfaction of the jury or to the satisfaction of the

7    Court if you waived a jury, the government consented and

8    the Court approved.

9          At the trial you would have the right to

10   confront any witnesses against you, the right to see and

11   hear those witnesses and to cross-examine them.

12         You would have the right to remain silent or to

13   testify on your own behalf but you could not be compelled

14   to incriminate yourself or to testify at all and your

15   silence could not be held against you in any way and no

16   inference of guilt could be drawn against you from your

17   failure to testify.

18         You would have the right to use subpoena or

19   other processes of the Court to compel witnesses to

20   attend the trial and testify and to obtain documentary

21   evidence which you might wish to offer in your defense.

22         If I accept your plea of guilty, you are

23   waiving, that is, you're giving up each of these rights

24   that I have just listed, there will be no trial and I

25   will have the same power to sentence you as if you'd been

U.S. v SMITH - 15-CR-333

1    found guilty after a trial on the count to which you

2    plead guilty.

3            Do you understand, Mr. Smith, that if your plea

4    is accepted, you will be adjudged guilty of that offense

5    the same as if there was a jury trial and the jury, after

6    hearing all of the evidence, found you guilty?

7            THE DEFENDANT:  Yes, ma'am.

8            THE COURT:  After the clerk takes your plea,

9    I'm going to ask you if you're pleading guilty freely and

10   voluntarily; about whether any promises of leniency have

11   been made to induce you to plead guilty other than what's

12   contained in the plea agreement; about whether threats or

13   force have been used to induce you to plead guilty; about

14   whether, as you're here today, you're under the influence

15   of any narcotics, drugs, pills or medicine which would in

16   any way impair your ability to understand the nature of

17   the charges and the consequences of pleading guilty;

18   about whether you did in fact commit the crimes charged

19   so that I can determine whether there is a factual basis

20   for your plea.

21           You will answer my questions under oath on the

22   record in the presence of your attorney.  Your answers,

23   if not truthful, may later be used against you in a

24   prosecution for perjury or for making a false statement.

25           I will assure myself that you have been given a

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1   copy of the charges, the indictment, that you have read

2   it, you understand it, and that you have had an

3   opportunity to discuss this case with your attorney, and

4   that your attorney has advised you of the nature of the

5   charges, your rights, the factual basis for the plea, and

6   the consequences of pleading guilty, and that you and

7   your attorney have discussed any defenses that you might

8   have, and then I will question your attorney separately.

9           You must also be advised that your guilty plea

10  constitutes a waiver of your right against

11  self-incrimination so I want to warn you not to plead

12  guilty unless you are in fact guilty of the charges made

13  against you in count one of the indictment to which you

14  are pleading guilty.

15          Miss Norton, would you swear in the defendant

16  please.

17          COURT CLERK:  Mr. Smith, would you please stand

18  and raise your right hand.  Please state your name for

19  the record.

20          THE DEFENDANT:  Shane Robert Smith.

21          (Whereupon, defendant placed under oath)

22          THE COURT:  Mr. Smith, do you understand all of

23  the rights that you have, sir?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  Do you still wish to plead guilty?

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

U.S. v SMITH - 15-CR-333

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  I'm going to ask you to stand,

3   then, Britney, would you take the plea.

4          COURT CLERK:  In the case of the United States

5   of America versus Shane Robert Smith, a/k/a Robert Smith,

6   case number 15-CR-333, the grand jury charges, in count

7   one of the indictment, illegal possession of a machine

8   gun.

9          On or about August 6th, 2015, in Washington

10  County, in the Northern District of New York, the

11  defendant, Shane Robert Smith, a/k/a Robert Smith, did

12  knowingly possess a machine gun, that is, a military

13  Armament Corporation MAC 10 machine gun bearing serial

14  number 1-3003144, in violation of Title 18, United States

15  Code, Sections 922(o) and 924(a)(2).

16          Mr. Smith, how do you plead to count one of the

17  indictment?

18          THE DEFENDANT:  Guilty.

19          COURT CLERK:  Do you acknowledge and admit to

20  the forfeiture allegation contained within indictment

21  15-CR-333?

22          THE DEFENDANT:  Yes.

23          COURT CLERK:  Thank you.

24          THE COURT:  Be seated.

25          Sir, is your full name Shane Robert Smith?

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

U.S. v SMITH - 15-CR-333

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  How old are you?

3          THE DEFENDANT:  19.

4          THE COURT:  Are you a citizen of the U.S.?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  How far did you go in school?

7          THE DEFENDANT:  G.E.D.

8          MR. MONTGOMERY:  What was your last grade you

9   completed?

10          THE DEFENDANT:  11th.

11          THE COURT:  Are you married?

12          THE DEFENDANT:  No.

13          THE COURT:  Do you have any children?

14          THE DEFENDANT:  No.

15          THE COURT:  What type of work do you usually

16   do?

17          THE DEFENDANT:  Farm work.

18          THE COURT:  Are you using any narcotics, drugs

19   or alcohol at the present time?

20          THE DEFENDANT:  No.

21          THE COURT:  Have you had any narcotics, drugs

22   or alcohol within the last 24 hours?

23          THE DEFENDANT:  Just sleeping medicine.

24          THE COURT:  Does the doctor prescribe that for

25   you?

```
1              THE DEFENDANT:  Yes.
2              THE COURT:  When is the last time you took your
3    sleeping medication?  Last night?
4              THE DEFENDANT:  Yes.
5              THE COURT:  Are you taking any other kind of
6    medicine at the present time?
7              THE DEFENDANT:  Just for ADHD.
8              THE COURT:  Okay.  Did you take your ADHD
9    medicine today?
10             THE DEFENDANT:  No.
11             THE COURT:  Are you currently being treated for
12   any mental health issues?
13             THE DEFENDANT:  No.
14             THE COURT:  When you take your medicine for
15   your ADHD, does that make it difficult for you to
16   understand what people are saying to you?
17             THE DEFENDANT:  No.
18             THE COURT:  Is there any reason why your
19   ability to understand my discussion with you today is
20   hindered or impaired in any way?
21             THE DEFENDANT:  No.
22             THE COURT:  Was your attorney, Mr. Montgomery,
23   hired by you or appointed by the Court?
24             THE DEFENDANT:  Hired by me.
25             THE COURT:  Are you fully satisfied with his
```

U.S. v SMITH - 15-CR-333

```
1    representation of you?
2              THE DEFENDANT:  Yes.
3              THE COURT:  Has he advised you of your rights?
4              THE DEFENDANT:  Yes.
5              THE COURT:  Is there anything that you need to
6    ask the Court about this proceeding?
7              THE DEFENDANT:  No.
8              THE COURT:  Has your lawyer or any Assistant
9    United States Attorney, any government agent or anyone
10   else made any promises that you would be treated
11   leniently or any other kind of promise to induce you to
12   plead guilty?
13             THE DEFENDANT:  No.
14             THE COURT:  Are you pleading guilty freely and
15   voluntarily?
16             THE DEFENDANT:  Yes.
17             THE COURT:  Has any force or threat been used
18   against you to induce you to plead guilty?
19             THE DEFENDANT:  No.
20             THE COURT:  Are you presently on probation from
21   any other Court?
22             THE DEFENDANT:  No.
23             THE COURT:  Are you on parole from any
24   institution?
25             THE DEFENDANT:  No.
```

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

U.S. v SMITH - 15-CR-333

1          THE COURT:  You've been arrested before,
2   correct?
3          THE DEFENDANT:  Yes.
4          THE COURT:  For both felonies and misdemeanors?
5          THE DEFENDANT:  No, just misdemeanors.
6          THE COURT:  Just misdemeanors?
7          MR. MONTGOMERY:  Your Honor, if I could correct
8   the record.
9          THE COURT:  Yes.
10          MR. MONTGOMERY:  He was arrested on a felony
11   charge and he's currently sentenced on that.  I believe
12   he's -- he may very well have been favored as a
13   misdemeanor but it was a felony.  It's a criminal
14   mischief E felony in Washington County.
15          THE COURT:  That goes back to 2014, does it?
16          MR. MONTGOMERY:  Yes, and I believe he was
17   sentenced on it this year because he had been released on
18   probation.  This arrest caused a violation of that
19   probation and he was resentenced as a Y.O., youthful
20   offender, in Washington County.
21          THE COURT:  Okay.
22          MR. MONTGOMERY:  For a term of one to three
23   years.
24          THE COURT:  I see that.  Thank you for that
25   clarification.

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

U.S. v SMITH - 15-CR-333

```
 1            MR. MONTGOMERY:  You're welcome, Judge.
 2            THE COURT:  Mr. O'Dowd, does the government
 3    have sufficient proof to prove this defendant guilty
 4    beyond a reasonable doubt?
 5            MR. O'DOWD:  Yes, your Honor, we do.
 6            THE COURT:  Mr. Smith, I'm going to ask Mr.
 7    O'Dowd to state what the government would prove if this
 8    case had gone to trial.  Please listen to that because
 9    after he finishes, I'm going to ask you if that's what
10    you did and what happened.
11            So, Mr. O'Dowd, would you go ahead and state
12    what the government would prove if the case had gone to
13    trial.
14            MR. O'DOWD:  Yes, your Honor.  The elements of
15    the offense are set forth in paragraph 4 of the plea
16    agreement.  If this case proceeded to trial, the
17    government would prove each of the following three
18    elements beyond a reasonable doubt:
19            First, that the defendant possessed a firearm
20    as described in the indictment.  Second, that the firearm
21    the defendant possessed was a machine gun.  In other
22    words, any weapon that shoots, is designed to shoot or
23    can be readily restored to shoot automatically more than
24    one shot, without manual reloading by a single function
25    of the trigger; and third, that the defendant acted
```

1    knowingly.

2          We would prove these elements by establishing

3    the following facts:  Beginning no later than May 2014,

4    the defendant repeatedly sought to purchase or otherwise

5    acquire firearms and ammunition, including fully

6    automatic weapons and semi-automatic weapons that he

7    intended to convert into fully automatic weapons.

8          On May 17th, 2014, the defendant sent an e-mail

9    message to a Switzerland-based Bitmessage account placing

10   an order for one M4 carbine and provided his home address

11   in Whitehall, New York.  An M4 carbine is an assault

12   rifle capable of firing as a machine gun by discharging

13   three-round bursts with a single trigger pull.

14         From no later than October of 22, 2014, to

15   August 6th, 2015, the defendant maintained one or more

16   accounts with VK, a Russian social media platform that's

17   similar to Facebook.  As of on or about October 22nd,

18   2014, the defendant listed his interests on his VK

19   profile page as guns, gunsmithing, building bombs,

20   knives, guerilla warfare, preserving my race and folk,

21   and destroying the government.

22         On January 12th of 2015, the defendant sent

23   another message to the same Switzerland-based Bitmessage

24   e-mail address.  His January 12th message stated that he

25   would like to, "trade my goods for some of yours," and

1    that he had "military-issued body armor, mag pouches, gas

2    masks and filters, ballistic vests and Kevlar helmets and

3    more" available for trade.

4              On January 27th, 2015, probation officers in

5    Washington County conducted a visit to the defendant's

6    residence in Whitehall, New York, in response to social

7    media postings by the defendant in which he indicated

8    that he was seeking to purchase ammunition.

9              During a consent search of the defendant's

10   residence, probation officers identified a combat helmet

11   and two body armor kits with heavy plates, among other

12   items.

13             On or about April 19th, 2015, the defendant

14   contacted another VK user via VK's private messaging

15   function and stated that he needed a favor for someone --

16   from someone, that the other user may be able to help

17   because the defendant was looking for something, namely,

18   an M10.  The other VK user responded the World War II

19   tank?  The AK copy?  The defendant responded that while

20   the tank would be nice, he was looking for an Ingram's

21   Mac not the original like the civilian one.

22             On that same day the defendant ordered a book

23   titled Full Auto Volume Three, Semi-Auto MAC 10

24   Modification Manual from the website Keepshooting.com for

25   delivery to Shane Smith, SRA, at the defendant's home

1   address in Whitehall, New York.

2           The subject of this book is how to convert MAC

3   10 firearms to fully automatic weapons.  The defendant

4   purchased this book for the purpose of converting a

5   semi-automatic MAC 10 firearm into a fully automatic,

6   illegal Mac 10.  In other communications, the defendant

7   indicated that SRA referred to a group he was forming

8   called the silent resistance Army.

9           After April 29th, 2015, after becoming aware of

10  the defendant's postings on social media, members of law

11  enforcement and individuals working with law enforcement

12  contacted the defendant in an undercover capacity.  In

13  subsequent communications, the defendant confirmed that

14  he sought to acquire "a simple Mac 10, nothing fancy civi

15  legal one" and that I can do a trade on some cash.

16          On May 1st, 2015, in response to questions

17  about what he was going to use the Mac 10 for, the

18  defendant stated that, "What I'm doing is going to rock

19  and roll it and I have a suppressor for a Mac 10 I fab'd

20  in my shop but it's going to be used to execute kikes,

21  coons and get money for the crew."

22          The defendant indicated that while he was

23  flexible about the type of firearm, "I prefer Mac 10 or

24  11".  On the same date as the above communications, the

25  defendant ordered three books from FTF Industries.com for

1   delivery to his home address.  These books were titled

2   Mac 10 Cookbook, Suppressers Volume 5, Ingram Mac 10, 11

3   Silencer Book and Full Auto Volume 8, M15 and Mini 15

4   Modification Manual.  The subject of these books,

5   respectively, were Mac 10 firearm generally, the

6   manufacturing of illegal silencers for Mac 10 and Mac 11

7   firearms and the conversion of Mac 10 firearms into fully

8   automatic weapons.

9          In subsequent discussions with members of law

10  enforcement acting in an undercover capacity, the

11  defendant repeatedly discussed other firearms and related

12  paraphernalia he sought to acquire.  These items included

13  an M-16 A-2, which is designed to fire as a machine gun

14  as well as hundreds of rounds of jacketed hollow-point

15  ammunition and Green Tip ammo, which is a type of

16  ammunition designed to pierce body armor.

17         The defendant also sought to acquire, quote,

18  boomers, which he explained meant explosives as in C4 or

19  grenades.  In the summer of 2015 the defendant made plans

20  to meet with an undercover law enforcement officer for

21  the purpose of acquiring some of the foregoing items.

22  Prior to the meeting the defendant asked whether the

23  gadget would be hard to handle on rock and roll and then

24  stated I guess I'll find out soon, LOL.  By rock and

25  roll, the defendant was referring to fully automatic

1   mode.

2          Prior to the meeting the defendant expressed

3   concerns that he was, quote, going to get busted by the

4   feds when I meet someone tonight.  I'm worried about

5   that, brother, he said.  When asked if he was building

6   his own army, the defendant responded well, like a hit

7   squad.

8          On August 6th, 2015, the defendant met with an

9   undercover agent of the Federal Bureau of Investigation

10  in Whitehall, New York.  At the meeting the undercover

11  agent displayed the following items:  A Military Armament

12  Corporation Mac 10 machine gun, a suppressor for the Mac

13  10 machine, one Colt M-16 model A-2 machine gun, one

14  Beretta model 92FS, 120 rounds of Green Tip ammunition.

15         Prior to the transaction the grenades were

16  rendered inert and the firearms were modified by law

17  enforcement for safety purposes so that they could not

18  immediately be fired, although they were capable of being

19  readily restored to firing.

20         The Mac 10 is a machine gun because it is

21  designed to shoot and it can be readily restored to shoot

22  automatically more than one shot without manual reloading

23  by a single function of the trigger.

24         The undercover agent explained and demonstrated

25  to the defendant how the Mac 10 and M-16 A2 could each be

1   switched to operate in fully automatic mode.  The

2   defendant then took possession of the Mac 10 machine gun,

3   a suppressor for the Mac 10 machine gun, one Colt M-16

4   model A2 machine gun, one Beretta model 92FS handgun, and

5   120 rounds of Green Tip ammunition.

6           In exchange for these items, the defendant

7   provided the undercover agent with a number of items

8   including jewelry, books and maple syrup, as well as a

9   promise of future payment.  Shortly after taking

10  possession of the above items, the defendant was

11  arrested.  After acknowledging and waiving his Miranda

12  rights, the defendant admitted he was aware he was in

13  possession of a Mac 10 and M16 with automatic firing

14  capabilities.

15          The defendant's effort to illegally acquire

16  automatic weapons or to acquire semi-automatic weapons

17  for the purpose of converting them to fully automatic

18  weapons predated his first contact with law enforcement

19  officials relating to this investigation.

20          Your Honor, in addition to the three elements

21  and to the facts I just laid out, we would also prove, if

22  necessary, that the defendant was not authorized to

23  possess the machine gun because he was not an agent of

24  any federal or state law enforcement agency at any time

25  during the relevant time period.

1          We would prove all of those factors through

2    documentary and testimonial evidence at trial.

3              THE COURT:  Thank you, Mr. O'Dowd.

4              Mr. Smith, you just heard what the government

5    said they could prove if this case had gone to trial.  Is

6    that what you did and what happened in this case?

7              THE DEFENDANT:  Yes, ma'am.

8              THE COURT:  Is that also your understanding,

9    Mr. Montgomery?

10             MR. MONTGOMERY:  Yes, it is, your Honor.

11             THE COURT:  There is a plea agreement, correct,

12   sir?

13             MR. MONTGOMERY:  Yes, your Honor.  What was

14   just presented on the record is exactly what -- reflects

15   what's in that plea agreement.

16             THE COURT:  All right.  Mr. O'Dowd, would you

17   inform the Court and the defendant about any stipulation

18   in the plea agreement relating to the sentence

19   guidelines.

20             MR. O'DOWD:  Yes, your Honor.  Paragraph 6 of

21   the plea agreement includes the following sentencing

22   stipulations:  The parties stipulate that the base

23   offense level is 18 because the offense involves a

24   machine gun.  Parties further stipulate that the offense

25   level is increased by two levels because the offense

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1    involved three firearms.

2              THE COURT:  All right.  Mr. Smith, do you

3    understand the plea agreement?

4              THE DEFENDANT:  Yes, ma'am.

5              THE COURT:  Have you gone over that with your

6    attorney?

7              THE DEFENDANT:  Yes, ma'am.

8              THE COURT:  You have signed it, correct?

9              THE DEFENDANT:  Yes, ma'am.

10             THE COURT:  Do you understand that the Court is

11   not bound by the stipulations in the plea agreement?

12             THE DEFENDANT:  Yes, ma'am.

13             THE COURT:  Do you understand that by entering

14   into that plea agreement, you're giving up a number of

15   rights that I have previously gone over with you but they

16   include the right to be presumed innocent until proven

17   guilty beyond a reasonable doubt, the right to plead not

18   guilty, the right to a trial by a jury, the right to

19   confront, cross-examine and compel attendance of

20   witnesses at trial, the right to be present as evidence

21   is offered, the right to remain silent and refuse to be a

22   witness against yourself, you're giving up the right

23   against self-incrimination.  You're giving up your right

24   to cross-examine witnesses at trial and to be present and

25   to present evidence in your defense.  So by signing that

1  plea agreement, you're giving up all of those rights.  Do

2  you understand that?

3  THE DEFENDANT:  Yes, ma'am.

4  THE COURT:  Do you understand that as set forth

5  in the plea agreement, you are waiving, that means you

6  are giving up any and all rights to appeal or

7  collaterally attack your conviction and any sentence of

8  imprisonment of 46 months or less, including any issues

9  with respect to the establishment of the advisory

10  sentencing guidelines and the reasonableness of the

11  sentence imposed?  So you're giving those things up.  Do

12  you understand that?

13  THE DEFENDANT:  Yes, ma'am.

14  THE COURT:  Do you understand that if the Court

15  decides to impose a sentence exceeding 46 months or

16  greater than 46 months, this would not permit you to

17  withdraw your guilty plea or to appeal or collaterally

18  attack your conviction but it would allow you to appeal

19  or collaterally attack the sentence imposed by the Court

20  to the extent permitted by law.  Do you understand that?

21  THE DEFENDANT:  Yes, ma'am.

22  THE COURT:  Mr. O'Dowd, would you inform the

23  defendant and the Court what the sentencing possibilities

24  are in this case.

25  MR. O'DOWD:  Yes, your Honor.  Maximum term of

1   imprisonment, based upon the defendant in this case, is

2   ten years, maximum fine is $250,000, maximum term of

3   supervised release is three years, and the defendant can

4   be sentenced to an additional term of imprisonment of up

5   to two years in the case of any supervised release

6   violation.  There's a special assessment of $100, there's

7   a forfeiture specified in the indictment.  In addition,

8   there are collateral consequences of the felony

9   conviction, including the loss of the right to vote and

10  hold public office, loss of the right to serve on a jury,

11  loss of the right to keep and bear firearms and other

12  collateral consequences as well.

13          THE COURT:  Do you know what the guideline

14  range might be, Mr. O'Dowd?

15          MR. O'DOWD:  Your Honor, the government has

16  undertaken an estimate of the advisory guideline range in

17  this case.  We estimate the total offense level here to

18  be 20, we estimate the Criminal History Category to be

19  II, that corresponds to pre-acceptance guideline range of

20  37 to 46 months.  After acceptance of responsibility, we

21  calculate the total offense level, assuming credit for

22  acceptance, we calculate the total offense level as 17,

23  which would lead to an advisory guideline range of 27 to

24  33 months.

25          THE COURT:  All right.  Thank you.

1          MR. O'DOWD:  Your Honor, I just clarify that

2     this is only an estimate and in the event it's incorrect,

3     the defendant won't be allowed to withdraw his plea as we

4     discussed.

5          THE COURT:  Thank you.  Mr. Smith, has your

6     attorney discussed the sentencing guidelines with you and

7     how they apply to your case?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  Do you understand that I will

10    consider those guidelines in determining your sentence?

11         THE DEFENDANT:  Yes, ma'am.

12         THE COURT:  Do you also understand that I won't

13    be able to determine what your specific guidelines range

14    will be until after I receive and review a pre-sentence

15    investigation report?

16         THE DEFENDANT:  Yes, ma'am.

17         THE COURT:  Also, do you understand that once

18    your guideline range has been determined, the Court has

19    the authority in some circumstances to depart from that

20    range and to impose a sentence that is more severe or

21    less severe than that called for by the guidelines?

22         THE DEFENDANT:  Yes, ma'am.

23         THE COURT:  Do you understand that a finding of

24    guilty may deprive you of certain valuable civil rights,

25    such as the right to vote, right to hold public office,

1   the right to serve on a jury, and the right to possess a

2   firearm?

3           THE DEFENDANT:  Yes, ma'am.

4           THE COURT:  There are other factors that I have

5   to consider in determining your sentence and I'm simply

6   going to tell you what those are now; they are found in

7   Title 18, United States Code, Section 3553(a) and they

8   include, the nature and circumstances of the offense and

9   your history and characteristics as the defendant; the

10  seriousness of the offense; the need to promote respect

11  for the law and to provide just punishment; the need to

12  afford adequate deterrence of criminal conduct; the need

13  to protect the public from further crimes; the need to

14  provide you with appropriate education, vocational,

15  medical or other treatment in an effective manner; any

16  pertinent policy issues raised by the Sentencing

17  Commission; the need to avoid unwarranted sentence

18  disparities and the need to provide restitution to the

19  victim, if any, of the offense.

20          I will also tell you that parole has been

21  abolished in the federal system, and if you are sentenced

22  to prison, you will not be released on parole.  I think

23  we have covered this but, Mr. O'Dowd, does the defendant

24  have the right to withdraw his plea?

25          MR. O'DOWD:  No, he does not, your Honor.


                Lisa L. Tennyson, CSR, RMR, FCRR
                UNITED STATES DISTRICT COURT - NDNY

1          THE COURT:  That's also your understanding,
2   Mr. Montgomery?
3          MR. MONTGOMERY:  That's correct, your Honor.
4          THE COURT:  Mr. Smith, do you understand that
5   if I decide that I do not agree with the sentencing
6   stipulations in the plea agreement, you may not withdraw
7   your plea?
8          THE DEFENDANT:  Yes, ma'am.
9          THE COURT:  Now that you have been informed of
10  the penalties to the extent that we know them and the
11  sentencing guidelines and my role under the guidelines,
12  do you still wish to plead guilty?
13         THE DEFENDANT:  Yes, ma'am.
14         THE COURT:  Are you pleading guilty because you
15  are guilty and for no other reason?
16         THE DEFENDANT:  Yes, ma'am.
17         THE COURT:  You have advised me that you have
18  gone over the indictment with Mr. Montgomery and that you
19  understand it.  Do you now understand the penalties that
20  the could be imposed upon you as a result of pleading
21  guilty?
22         THE DEFENDANT:  Yes, ma'am.
23         THE COURT:  Other than what's contained in the
24  plea agreement, have any promises been made to you as to
25  what your sentence might be?

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1      THE DEFENDANT:  Yes.

2      THE COURT:  Do you understand that you may not

3  appeal your sentence if I sentence you to 46 months or

4  less?

5      THE DEFENDANT:  No.  Yes, ma'am.

6      THE COURT:  All right.  I'm going to ask you

7  that again so that the answer is clear on the record.

8      Do you understand that you may not appeal your

9  sentence if I sentence you to 46 months or less?

10      THE DEFENDANT:  Yes, ma'am.

11      THE COURT:  All right.  Mr. Montgomery, would

12  you state for the record your background and experience

13  with particular reference to the sentencing guidelines.

14      MR. MONTGOMERY:  Well, your Honor, I believe I

15  was admitted to federal court back in 1983 or '84 and

16  I've practiced criminal law since then, former district

17  of Warren County, and I have had experience here in

18  federal court and I have reviewed with Mr. Smith the

19  various aspects that you referenced with respect to the

20  federal guidelines and the basis for arriving at those

21  guidelines.

22      THE COURT:  How much time would you say you've

23  spent with Mr. Smith on this case?

24      MR. MONTGOMERY:  Probably visited him in

25  Rensselaer County Jail probably no less than five times

1    and I would say visits ranged from an hour to an hour and

2    a half.  In addition to that, I've had telephone

3    conferences with him.  I have also met with -- in the

4    Warren County facility with respect to the charge that

5    was pending there which resulted in a violation of

6    probation, based upon him being charged in this case.

7            And in addition to that, I have spent

8    substantial amount of time speaking with his grandfather,

9    Nelson Smith, who is responsible for raising Mr. Smith,

10   who is present in the courtroom today and I know that Mr.

11   Smith -- Nelson Smith has communicated with the

12   defendant, his grandson, with respect to the various

13   discussions we have had concerning this case.

14           THE COURT:  Have you advised Mr. Smith of his

15   rights, the nature of the charges against him and the

16   consequences of pleading guilty?

17           MR. MONTGOMERY:  Yes, I have, your Honor.

18           THE COURT:  Did you get adequate discovery from

19   the government in this case?

20           MR. MONTGOMERY:  Very much so.

21           THE COURT:  Have you made any promises or

22   threats to induce Mr. Smith to plead guilty?

23           MR. MONTGOMERY:  No, your Honor.

24           THE COURT:  Are you satisfied that he's

25   pleading guilty freely and voluntarily with an

1   understanding of the nature of the charge and the

2   consequences?

3           MR. MONTGOMERY:  Yes, your Honor.

4           THE COURT:  Do you know of any viable defense

5   that the defendant has that could be successfully

6   interposed at the time of trial?

7           MR. MONTGOMERY:  No, your Honor.

8           THE COURT:  Do you know of any other reason why

9   Mr. Smith should not plead guilty here today?

10          MR. MONTGOMERY:  No, your Honor.

11          THE COURT:  Thank you, Mr. Montgomery.

12          MR. MONTGOMERY:  You're welcome.

13          THE COURT:  I have taken into consideration the

14  statements made to me by you, Mr. Smith, as well as those

15  made to me by your attorney, Mr. Montgomery, and

16  statements made by the Assistant United States Attorney

17  Mr. O'Dowd.

18          Based upon those discussions, it is the finding

19  of this Court that you have pled guilty knowingly and

20  voluntarily; that you are competent and capable of

21  entering an informed plea; that you understand the

22  charges against you and the consequences of pleading

23  guilty; that there was a basis in fact for the Court

24  accepting this plea into the record.  The plea agreement

25  is incorporated into the record.

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1          I accept your plea and you are now adjudged
2     guilty of that offense.
3          I direct probation to prepare and submit a
4     pre-sentence report.  Counsel, the clerk will
5     electronically file the Northern District Uniform
6     Pre-Sentence Order.  Once the presentence report is
7     prepared, it will be lodged with the clerk's office and
8     you will receive it electronically through ECF.  Any
9     objections to the report must be submitted in writing to
10    probation within 14 days of receipt of the report.
11         Sentencing is set for August 15th, 2016, at
12    10 A.M. here in Albany.  Again, that is August 15th,
13    2016, at 10 A.M.
14         Is there anything further from the government?
15         MR. O'DOWD:  No, your Honor.
16         THE COURT:  Anything further from the defense?
17         MR. MONTGOMERY:  No, your Honor.
18         THE COURT:  The defendant is remanded.  Court
19    stands adjourned.
20         (Whereupon, proceeding concluded)
21              * * * * * * * * * *
22
23
24
25


                  Lisa L. Tennyson, CSR, RMR, FCRR
                UNITED STATES DISTRICT COURT - NDNY

U.S. v SMITH - 15-CR-333

1

2

3

4                    C E R T I F I C A T I O N

5

6

7              I, Lisa L. Tennyson, RMR, CSR, CRR, Official

8    Court Reporter in and for the United States District

9    Court for the Northern District of New York, hereby

10   certify that the foregoing 29 pages taken by me to be a

11   true and complete computer-aided transcript to the best

12   of my ability.

13

14   _____

15              Lisa L. Tennyson, R.M.R., C.S.R., C.R.R.

16

17

18

19

20

21

22

23

24

25

                 Lisa L. Tennyson, CSR, RMR, FCRR
            UNITED STATES DISTRICT COURT - NDNY