# WILLIAM E. MONTGOMERY, III

Attorney at Law
15 Pearl Street
P.O. Box 414
Glens Falls, NY 12801

Telephone: (518) 798-6885  
Fax: (518) 798-5974

E-Mail Address: info@billmontgomerylaw.com

August 26, 2016

Hon. Mae A. D'Agostino  
United States District Court  
James T. Foley, U.S. Courthouse  
Albany, New York 12207-2924

RE: People v. Shane Smith  
     United State District Court  
     Charges: possession of firearm  
     My File No.: 4-3252b

Dear Judge D'Agostino:

I represent defendant Shane Smith.

Enclosed is the Affidavit offered by defendant Shane Smith's grandparents in support of his sentencing.

I am also filing this electronically on this date.

Thank you for the Court's consideration in this regard.

Respectfully yours,

William E. Montgomery, III

Cc: AUSA Sean O'Dowd (electronically filed)  
     Shane Smith

UNITED STATES DISTRICT COURT
NORTHEASTERN DISTRICT      STATE OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                              AFFIDAVIT OF
                                              NELSON AND
                                              SUSAN SMITH
                                              IN SUPPORT OF
                                              SENTENCING
                                              MEMORANDUM

        -v-                         Docket No.: DNYN
                                           1:15-CR-00333 -001

SHANE ROBERT SMITH,
a/k/a/ Robert Smith,

        Defendant.
_____

STATE OF NEW YORK:
                      :     SS.:
COUNTY OF WARREN:

    Nelson and Susan Smith, being duly sworn, deposes and says, as follows:

    1. We reside at 2640 County Route 12, Whitehall, New York.

2. We have gladly cooperated with Senior US Probation officer Edward M. Cox in his preparation of the pre-sentence report.

3. We love our grandson defendant Shane Smith and want the Court to know we are there as a resource for him upon his release, financially, for support and for housing, as we always have been. We will never give up on him because we know he really is a good child.

4. We are the grandparents of defendant Shane Smith.

5. I Nelson Smith am currently retired. I worked for the Canadian Pacific Railroad for 37 years.

6. I Susan Smith have always been a homemaker.

7. Defendant Shane Smith, our grandson, has resided with us since he was 10 years old.

8. Defendant Shane Smith has resided with us because his father was in prison on the date of his birth and had a sorted criminal history which resulted in his incarceration for the majority of defendant Shane Smith's life. His father was a drug addict. In fact, when defendant Shane Smith was 8 or 9 years old his father died of a drug overdose.

9. Defendant Shane Smith's mother Melissa Smith, our daughter, likewise was involved in drug activity and was not a suitable parent for defendant Shane Smith.

10. Our grandson defendant Shane Smith has suffered tremendously as result of this situation and since the age of 8 or 9 has received extensive mental health counseling and treatment, by probably no less than 5 different mental health agencies.

11. Our grandson defendant Shane Smith attended school in Whitehall, NY and BOCES. Throughout his attendance in school and BOCES he was subjected to various forms of bullying. This was devastating to him and us. We tried our best to seek alternatives and help for him, however back then this sort of bullying was not recognized as being bad or unacceptable.

12. We have attached a letter from Chris Dudley who was his teacher at BOCES for heavy equipment. Our grandson used to talk to us so fondly of Mr. Dudley and what he was learning.

13. Our grandson defendant Shane Smith is easily manipulated because he has always tried to fit in. It has been very sad to watch.

14. Our grandson defendant Shane Smith was diagnosed with Attention Deficit, Hyperactivity Disorder and Oppositional Defiant

Disorder, as reflected in the pre-sentence investigation report. As set forth in the pre-sentence investigation report he was prescribed a number of different medications (par. 55-56).

15. Throughout his life the various medicines our grandson was given affected him badly. They would change him, affect his temperament and his ability to sleep. We struggled with this, with him, for a long time. It never really got better.

16. Our grandson defendant Shane Smith never fit in. He has tried to fit in by bragging and exaggerating. He tells many stories, to whomever will listen.

17. We have reviewed a lot of the papers in defendant Shane Smith's case which were provided to Mr. Montgomery by the prosecutors. Although they were shocking to Mr. Montgomery, once we reviewed them with him, he had a much better understanding how defendant Shane Smith acts, brags and exaggerates. For example:

    a. He bragged about forming a group called the Silent Resistance Army. There was no such group, nor could he have formed one. He had no friends.

    b. He bragged about having a shop in which he could make silencers and "rock and roll" guns. He had no such shop, nor even the remote ability being able to do this.

    c. He bragged about owning and using weapons. In fact, he never owned any weapons. We only had a 22 caliber rifle in the house. He did target practice with his grandfather on occasion. I, Nelson Smith, did take him to the rifle club on occasion to teach him about gun safety. I also took him to the hunting safety course.

    d. I have reviewed the various texts, emails and telephone calls between he and the undercover agent. They are pure nonsense and a product of his wild imagination. Some distorted way to make him feel important.

18. An example of defendant Shane Smith's immaturity, imagination and naivety, he took costume jewelry, books and maple syrup to the undercover agent as payment for the machine guns, etc. He had no money.

19. The sale of these weapons took place at a motel in Whitehall because our grandson had not car or other way of going anywhere else. Had the undercover agent not come to Whitehall, this "sale"

would never have occurred. How is it believable to anyone that our grandson could walk down the main street of Whitehall to a motel and then walk home with two machine guns, pistol, grenades and a silencer slung over his shoulder. It is beyond comprehension to us and defies reality.

20. Until the date of this incident, defendant Shane Smith had never left the immediate Whitehall area. He only went to Mechanicville to meet the undercover agent in that he had just met a girl who lived there. I had driven him down there so he could spend the weekend. Prior to this he had never been out of Whitehall.

21. Our grandson defendant Shane Smith was typically home every evening by 10 and in bed.

22. The pre-sentence report reflects he was on probation for spray painting graffiti in Whitehall. Even when on probation he did well. When the probation officer came to our house, defendant Shane Smith always invited him in and was friendly. Shane looked forward to seeing him and would show him the animals. This happened every other week. The probation officer was always aware of the army surplus type military items our grandson had. The probation office told us it was okay because it was legal.

It was only when the FBI came with the probation officer that they took some of the items.

23. I Nelson Smith am somewhat familiar with guns. Since my grandson's arrest, I have confirmed that you can buy the green tip ammunition at Walmart.

24. Since our grandson Shane Smith has been incarcerated we have visited with him 2 times a week, the maximum allowed by the jail. He calls us several times a day.

25. We have noticed a tremendous amount of regret from our grandson for what he got involved with. He tells us "you know I never would have done any of that stuff", "I will never get involved with this stuff again, I just didn't realize…" and, "I just want to go back to school, get a job and live with you". All he talks about now is farming, getting goats, chickens, etc. We have chickens, ducks, and dogs and he is always asking how many eggs the chickens are laying. We let the dog bark so he can hear him over the phone and it makes him very happy.

26. The statements he made about "Kikes and Coons" mortify us. He cannot even seem to explain or really understand the import of

what it is that he said. He just tells us he now really regrets all of it.

27. Although the pre-sentence investigation report comments that he has tried beer and some drugs, he has never presented us with any problems with drinking and we can't remember when it was he last had a drink. We have never known him to be under the influence of drugs. We were a little surprised to learn that he had been smoking marijuana because we hadn't realized this was going on to any great extent. We knew he had experimented now and then and we kept an especially close eye on him due to the addiction problems suffered by his father and mother. Again, this never evidenced as a problem.

28. We want to let the Court know that we will stand behind our grandson 100% when he is released.

29. We understand he has done wrong and needs to be punished, as he does. The same way would punish him when he did wrong at our home.

30. Finally, we want to thank your Honor for reading this.

_____  
Susan Smith  
Sworn to before me on  

August 26, 2016.  
_____  
Notary Public  

_____  
Nelson Smith  
Sworn to before me on  

August 26, 2016  
_____  
Notary Public

Rec'd 5/19/16

May 12, 2016

Mr. Christopher Dudley

P.O. box 46

Whitehall, ny 12887

To Whom It May concern:

I have known Shane Smith since he was a young boy in Whitehall. He went through grade school as well as high school with my own sons. In my capacity as a Cub Scout Dad, Pee Wee football coach, and in general an involved parent, and even later in his life as his Heavy Equipment instructor at his B.O.C.E.S. program I pretty much watched this boy grow up.

When Shane first began to get into serious trouble it actually puzzled me, He was never an angel, but any misbehaviors he'd ever exhibited were mischievous schoolboy outbursts. He began to change in his junior year of high school. I spoke to him and he explained that he was spending a lot of time on the computer, he wouldn't say where or what he was doing, but it had changed him enough so that I knew he was in trouble. Shortly after this he experienced his first serious "Run-In" with the law.

I was totally disgusted with his behavior and I have absolutely no pity for anyone who holds these types of views. In hindsight I suppose I did what everyone else did, just wrote him off as a "Bad apple". As time went on and I followed Shane's situation in the media I began to ask myself what happened to this kid? How is he different than the many other young people I've worked with?

The root cause I believe is the fact that this kid really didn't have a chance. God Bless his Grandparents for giving him his only exposure to a traditional, loving family. I'm sure you've researched Shane's background and understand the obstacles he's faced, so I won't waste your time listing them. But I would ask that you consider them when dealing with him.

I absolutely understand that Shane has committed a very serious crime and he needs to pay for it, but if you just talk to this kid for ten minutes you'll understand that he is absolutely a follower and has never been a leader. He is the definition of the type of person who will become institutionalized. Knowing this boy the way I do and having watched him grow-up I believe he can be rehabilitated, genuinely, not simply incarcerated.

Respectfully,

Chris Dudley